**UNITED STATES of America**

v.

**Victor RODRIGUEZ.**

**No. Crim. 98–362.**

United States District Court,
E.D. Pennsylvania.

May 21, 2002.

Arnold R. Silverstein, Wilson & Silverstein, Philadelphia, PA, Robert E. Welsh, Jr., Lisa A. Mathewson, Welsh & Recker, Philadelphia, PA, for Roberto Gonzalez.

Gina M. Cerone, Philadelphia, PA, for Gilberto Perez.

Ruben A. Rodriguez, Philadelphia, PA, James F. Brose, Media, PA, for Isreal Paniagua.

Jeannie Damirgian, Philadelphia, PA, for Luis Lozado.

Treva Hall Melvin, Melvin & Melvin, PC, West Chester, PA, for Efrain DeJesus–Torres.

Jeremy H. Gonzalez Ibrahim, Law Office of Jeremy H. Gonzalez Ibrahim, Philadelphia, PA, for Jesus Malave–Rodriguez.

Guillermo L. Bosch, Collegeville, PA, for Santos Gomez.

Nicolas Velez, Bronx, NY, Carlos A. Martir, Philadelphia, PA, for Ivan Torres.

Gina M. Cerone, Philadelphia, PA, Charles J. Cunningham, Philadelphia, PA, Elizabeth K. Ainslie, Schnader, Harrison, Segal & Lewis LLP, Philadelphia, PA, for Benjamin Mejias.

Jules Epstein, Kairys & Rudovsky, Philadelphia, PA, Timothy J. Sullivan, Sullivan & Sullivan, College Park, MD, for Carlos Ivan Llera–Plaza.

Michael F. Giampietro, Krasner & Restrepo, Philadelphia, PA, L. Felipe Restrepo, Krasner & Restrepo, Philadelphia, PA, for Wilfredo Martinez Acosta.

Gerald A. Stein, Philadelphia, PA, Philip J. Degnan, Law Offices of Philip J. Degnan, Philadelphia, PA, Bernard L. Siegel, Philadelphia, PA, for Victor Rodriguez.

S. Lee Ruslander, II, West chester, PA, for Frank Cecerez.

Michael E. Baughman, Dechert, Price & Rhoades, Philadelphia, PA, for Philadelphia Newspapers, Inc.

Thomas R. Perricone, David H. Resnicoff, U.S. Attorney's Office, Philadelphia, PA, for U.S.

### *MEMORANDUM/ORDER*

POLLAK, District Judge.

Yesterday, on May 20, 2002, I ruled from the bench that the motion for a mistrial of defendant Victor Rodriguez, in this capital case, made orally by counsel on May 15 and amplified by counsel's written submission on May 17, was granted. After announcing the ruling I undertook to present the reasons for that ruling in a bench opinion.

The event that was the catalyst for defendant Rodriguez's motion was the May 13 change of plea of defendant Llera Plaza in which he acknowledged guilty participation in the four murders also charged against Mr. Rodriguez. On May 20, prior to argument on defendant Rodriguez's motion for a mistrial, defendant Martinez Acosta also changed his plea, acknowledging guilty participation in three of those four murders.

In yesterday's bench opinion granting the motion for a mistrial, I acknowledged that granting the motion did not conform to the standard method, well documented in the case law, of handling a mid-trial change of plea in a multi-defendant criminal prosecution. The standard method is to (a) refrain from telling the jury of the change of plea, and (b) instruct the jury that the absent defendant has been withdrawn from the case for legally sufficient reasons and that the jury (i) should not speculate on why the absent defendant is

no longer in the case and (ii) should focus single-mindedly on whether the government has established, beyond a reasonable doubt, the guilt of the defendant or defendants remaining in the case, bearing in mind that in order to achieve a conviction of a defendant the government must carry its burden of proof individually as to that defendant.

I explained my ruling as substantially based on what I perceived to be the likelihood that, if the trial, which has up to now taken some six weeks, were to continue for several more weeks with Mr. Rodriguez as the sole defendant, (1) the jury, or some members thereof, would in due course surmise that changes of plea constituted not merely a possible, but perhaps the most probable, explanation for the departure from the case of defendants Llera Plaza and Martinez Acosta, and (2) since the government, in its meticulous presentation of the murder charges against defendants Llera Plaza and Martinez Acosta, has wholly keyed those charges to its efforts to establish that defendant Rodriguez orchestrated the murders and hired defendants Llera Plaza and Martinez Acosta (and others) to carry them out, guilty pleas by defendants Llera Plaza and Martinez Acosta would almost inevitably be taken by jury members to be evidence of defendant Rodriguez's guilt.

When I presented my bench ruling and accompanying bench opinion, the government asked me to reconsider the ruling in the light of case authority additional to the case authority previously addressed by government counsel and defense counsel and discussed by me from the bench. After recessing to review that additional case authority, I returned to the courtroom and stated that I adhered to the ruling granting the motion for mistrial that I had announced prior to the recess. Quite understandably, the government regards my ruling as not merely a departure from ordinary practice—which it is—but an unwarranted departure. Granting a mistrial entails selecting a new jury and trying the case anew—thereby committing counsel for the government and counsel for defendant Rodriguez, all of whom have labored assiduously and very capably for many months, to renewed and intensive and lengthy efforts. Further, on the government's side, additional burdens are placed on many government witnesses who have already given testimony and will be required to give testimony again. Moreover, further delay of this case brings added anxiety to the families of the victims. These are not small costs. However, it is my judgment that they do not outweigh what I perceive to be the substantial risk that to continue the current trial will unacceptably skew the process by which the jury determines the culpability of Mr. Rodriguez.

It is important that the scope of my ruling not be read too broadly. I am not suggesting—with respect to this case or any other—that there is anything wrong about the government presenting the testimony of cooperating co-defendants, who have pled guilty pursuant to agreements with the government, as an integral part of the prosecution's case. That is, of course, an accepted and very important element of the criminal trial process. In this very trial, the government has, up to this point, largely—and sensibly—built its case on the testimony of cooperating co-defendants Ivan Torres and Gilberto Perez, as well as others. And if Messrs. Llera Plaza and Martinez Acosta had, pursuant to plea agreements entered into before or in the course of the trial, testified as government witnesses against Mr. Rodriguez, there would have been no problem. The jury would have been able to evaluate that testimony on its

merits, and would—as, with the testimony of Messrs. Torres and Perez—be in a position to consider whether the potential benefits flowing from the disclosed plea agreements undermined, in any degree, the witnesses' credibility. The problem presented by the departure from the case of Messrs. Llera Plaza and Martinez Acosta is that they will not be witnesses and that the jury is likely (a) to surmise from their absence that they have pled guilty and (b) to draw from the fact of such guilty pleas the improper inference that Mr. Rodriguez is also guilty. It is, of course, black-letter law that the guilty plea of one defendant cannot serve as substantive evidence against another defendant. To insure that Mr. Rodriguez is tried by a jury that will not be in a position to draw such an improper inference is the purpose of granting the motion for mistrial.

I recognize that my ruling cuts against the accepted convention that if a jury is instructed to do something—e.g., in an instance of this kind, not to conjecture why a defendant is no longer in the courtroom—the jury can be presumed to follow that instruction. While that convention is broadly applicable, and useful, it is also the case that there are circumstances in which it is recognized that jury compliance with an instruction cannot be relied on. For examples in other settings see Justice Jackson's concurring opinion, joined by Justices Frankfurter and Murphy, in *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949) and Justice Brennan's opinion for the Court in *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."). Given the special characteristics of this case— the inextricable interconnections between the murder charges against Messrs. Llera Plaza and Martinez Acosta and the overlapping murder charges against Mr. Rodriguez—I conclude that in this instance instructions to the jury to disregard the departures from the case of Messrs. Llera Plaza and Martinez Acosta are likely to be of little avail.[1]

Accordingly, for the reasons presented from the bench on May 20, 2002, as supplemented by the foregoing discussion in this memorandum/order, defendant Rodriguez's motion for a mistrial is GRANTED, and counsel and the court will promptly confer on the steps to be taken towards a new trial.

---

**1.** Another special characteristic of this case is that it is one in which the government seeks a death sentence. Were the current trial to go forward to verdict, and were the jury to find Mr. Rodriguez guilty of one or more murders, the jury would thus be required to determine Mr. Rodriguez's sentence—death or life imprisonment without parole—at a penalty hearing. I have no confident view with respect to whether the absence of defendants Llera Plaza and Martinez Acosta during the balance of the trial could be expected to influence the jury's consideration of the issues presented at a penalty hearing—and, if so, what that influence would likely be. However, the fact that this is a capital case underscores the need for scrupulous attention to all its attendant procedures.